JENNIFER LYNCH (SBN 240701)
jlynch@eff.org
JAMIE WILLIAMS (SBN 279046)
jamie@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | **COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552** |

1.    This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for injunctive and other appropriate relief.  Plaintiff Electronic Frontier Foundation (EFF) seeks the release of records that Plaintiff requested from Defendant Department of Justice (DOJ) and its component Federal Bureau of Investigation (FBI) concerning the FBI's development and use of Rapid DNA technology and plans to incorporate DNA profiles generated using Rapid DNA into the Combined DNA Index System (CODIS).

## PARTIES

2.    Plaintiff EFF is a not-for-profit corporation established under the laws of the Commonwealth of Massachusetts, with offices in San Francisco, California and Washington, D.C. EFF is a donor-supported membership organization that works to inform policymakers and the general public about civil liberties issues related to technology and to act as a defender of those

liberties. In support of its mission, EFF uses the FOIA to obtain and disseminate information concerning the activities of federal agencies.

3. Defendant DOJ is a Department of the Executive Branch of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f). The FBI is a component of Defendant DOJ.

## JURISDICTION

4. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## VENUE AND INTRADISTRICT ASSIGNMENT

5. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6. Assignment to the San Francisco division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in this district and division, where Plaintiff is headquartered.

## FACTUAL ALLEGATIONS

### History of Criminal DNA Collection and its Impact on Privacy

7. Unlike fingerprints, which can only be used for identification, "DNA contains an extensive amount of sensitive personal information beyond mere identifying information." *People v. Buza*, 231 Cal. App. 4th 1446, 1468 (2014)(citations omitted) *review granted and opinion superseded,* 342 P.3d 415 (Cal. 2015). "With today's technology, scientists have the power to discern [from DNA] genetic traits, behavioral tendencies, propensity to suffer disease or defects, [and] other private medical information[.]" *Raynor v. State*, 99 A.3d 753, 771-72 (Md. 2014)(Adkins, J., dissenting). DNA can also "provide insights into personal family relationships, . . . physical attributes, and ancestry." *Buza*, 231 Cal. App. 4th at 1469 (citations and internal quotations omitted). "A DNA sample contains the entire human genome, the total of all that person's genetic information." *Id*. Given the "vast amount of sensitive information that can be mined from a person's DNA," courts have been "mindful of the . . . very strong privacy interests

COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF
THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

that all individuals have in this information." *United States v. Mitchell*, 652 F.3d 387, 407 (3d Cir. 2011) (citations omitted).

8.    In 1990, Virginia became the first state to create a criminal DNA databank and to require DNA collection from all convicted felons. *See Jones v. Murray*, 962 F.2d 302, 303 (4th Cir. 1992).[1] That same year, as part of a pilot program, FBI partnered with fourteen state and local laboratories to develop a system to manage DNA data collected from crime scenes and convicted offenders.[2] This pilot program established the Combined DNA Index System (CODIS),[3] the FBI's "program of support for criminal justice DNA databases as well as the software used to run these databases." [4]

9.    By 2001, all 50 states required DNA to be collected from offenders convicted of sex offenses, and more than half of the states also collected DNA from offenders convicted of other violent crimes such as murder, manslaughter, arson, kidnapping, and robbery.[5]

10.    Today, 48 states require the collection of DNA for any felony conviction, and 42 states require the collection of DNA samples for at least some misdemeanor convictions.[6] Thirty states and the federal government also collect DNA samples from at least some arrestees.[7] The laws mandating DNA collection from convicted offenders and arrestees do not require any

---

[1] *See also* Michelle Hibbert, "DNA Databanks: Law Enforcement's Greatest Surveillance Tool?," 34 Wake Forest L. Rev. 767, 769 (1999).

[2] FBI, CODIS—Crime, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis_crime (last visited Aug. 1, 2015).

[3] FBI, Science and Technology in the Name of Justice, Part 1: DNA Database Helps Deliver Promise of Powerful Crime-Fighting Tool (Feb. 2, 2004), https://www.fbi.gov/news/stories/2004/february/codis_020204.

[4] FBI, Frequently Asked Questions (FAQs) on the CODIS Program and the National DNA Index System, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet.

[5] FBI, Congressional Testimony of Dwight E. Adams, Deputy Assistant Director, Laboratory Division, FBI, Before the House Committee on Government Reform, Subcommittee on Government Efficiency, Financial Management and Intergovernmental Relations: "The FBI's DNA Program" (June 12, 2001) *available at* https://www2.fbi.gov/congress/congress01/dwight061201.htm).

[6] "Convicted Offenders Required to Submit DNA Samples," National Conference of State Legislatures, http://www.ncsl.org/Documents/cj/ConvictedOffendersDNALaws.pdf (last visited Aug. 15, 2015).

[7] "DNA Arrestee Laws," National Conference of State Legislatures, http://www.ncsl.org/Documents/cj/ArresteeDNALaws.pdf (last visited August 15, 2015).

showing of probable cause or even individualized suspicion. State and federal law enforcement officers also collect DNA from unidentified human remains, missing persons, crime victims, family members who consent to collection, items touched and body fluids left behind at crime scenes, and objects a suspect may have touched when officers do not have enough evidence to arrest the suspect.[8]

11.     Early DNA collection laws required convicted offenders to submit blood samples for DNA analysis.[9] Now most laws allow DNA to be collected from a swab of the inner cheek, called a "buccal swab."[10] This generates a DNA sample, from which certain standardized sections of the DNA are extracted to create a "DNA profile."[11] The specific genetic locations or "loci" of the DNA that are extracted are considered to be non-coding and so are currently "not known to have any association with a genetic disease or any other genetic predisposition." *Maryland v. King*, 133 S.Ct. 1958, 1968 (2013). However, the profile contains enough information to identify a person's family members. *Buza*, 231 Cal. App. 4th at 1470 (citations omitted) (noting that California currently conducts familial searches on DNA profiles).

12.     After a DNA profile is extracted, it is then uploaded to a local, state and/or federal database (discussed further below). Labs and law enforcement agencies retain the DNA sample, even after the profile has been extracted and uploaded to a database. As one court has noted, almost every state and federal DNA collection law, "is silent as to how long these specimens and samples may be kept, and it is reasonable to expect they will be preserved long into the future, when it may

---

[8] *See* 42 U.S.C. §14132(a); FBI, Frequently Asked Questions (FAQs) on the CODIS Program and the National DNA Index System, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet; *Raynor v. State*, 99 A.3d 753 (Md. 2014).

[9] *See, e.g., Jones*, 962 F.2d at 303 (describing Section 19.2-310.2 of the Virginia Code, as effective on July 1, 1990); *United States v. Kincade*, 379 F.3d 813, 817 (9th Cir. 2004)("[FBI] guidelines require those in federal custody and subject to the DNA Act . . . to submit to compulsory blood sampling.").

[10] *See, e.g., Maryland v. King*, 133 S.Ct. 1958, 1967-68 (2013)(describing a buccal swab as a "common procedure" for collecting cells that "involves wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells"); Cal. Pen. Code § 295(e) (noting that "collection of biological samples for DNA analysis from qualifying persons under this chapter is limited to collection of inner cheek cells of the mouth (buccal swab samples)").

[11] *See generally Buza*, 231 Cal. App. 4th at 1454-55 for an explanation of this process.

be possible to extract even more personal and private information than is now the case." *Buza*, 231 Cal. App. 4th at 1470.[12]

13.     Almost as soon as states mandated criminal DNA collection without probable cause or individualized suspicion, these laws and practices were challenged in the courts as unconstitutional searches and seizures under the Fourth Amendment and similar state provisions. *See, e.g., Jones*, 962 F.2d 302; *Rise v. Oregon*, 59 F.3d 1556, 1564 (9th Cir. 1995). While some intermediate and state high courts have held these statutes to be unconstitutional, *see, e.g., Buza,* 231 Cal. App. 4th 1446; *State v. Medina*, 102 A.3d 661 (Vt. 2014); *King v. State*, 42 A.3d 549, 552-53 (Md. Ct. App. 2012)(overturned by *King*, 133 S.Ct. 1958), almost all of the courts that have confronted the issue have ultimately upheld the constitutionality of the challenged statute or DNA collection practice. *See, e.g., Mitchell*, 652 F.3d at 407 ("every one of our sister circuits to have considered the [privacy] concerns raised by Mitchell has rejected them . . ."); *see also, e.g., United States v. Kincade*, 379 F.3d 813, 849-851 (9th Cir. 2004); *King*, 133 S.Ct. 1958.

14.     However, even in many of the cases that ultimately found the DNA collection practice to be constitutional, the courts were sharply divided, and the dissenting judges recognized the privacy impact of DNA collection. Dissenting opinions in early cases focused on the privacy interest in preserving bodily integrity from forced blood extraction. *See, e.g., Jones*, 962 F.2d at 311 (Murnaghan, J., concurring in part and dissenting in part); *Rise*, 59 F.3d at 1564 (D.W. Nelson, J., dissenting). Later majority and dissenting opinions recognized the privacy interest in the information contained in DNA itself. *See, e.g., United States v. Davis,* 690 F.3d 226, 243-44 (4th Cir. 2012)("an individual retains a legitimate expectation of privacy in the information obtained from the [DNA] testing")*; Raynor*, 99 A.3d at 772 (Adkins, J., dissenting)(noting privacy also includes the "right of a person to control information about himself and intimate aspects of life" and that the Supreme Court has recognized "privacy in personal information *not* tied to a physical

---

[12] The FBI's "Quality Assurance Standards for DNA Databasing Laboratories" require labs to retain DNA samples "[w]here possible . . . for retesting for quality assurance and sample confirmation purposes." FBI, Quality Assurance Standards for DNA Databasing Laboratories, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/qas_databaselabs (last visited Aug. 1, 2015).

intrusion" (emphasis in original)); *Kincade*, 379 F.3d at 849-851 (Reinhardt, J., dissenting).

15.     Judges on at least one court also recognized the "catastrophic potential" danger to the exercise of First Amendment rights to free speech and assembly inherent in building a permanent national database containing genetic information that identifies Americans. Ninth Circuit Judge Reinhardt, speaking for himself and three other judges, pointed to the example of J. Edgar Hoover and noted that "the database could be used to repress dissent or, quite literally, to eliminate political opposition. . . . [and] future governments might use the [federal DNA] Act's already wide reach to monitor, intimidate, and incarcerate political opponents and disfavored minorities." *Kincade*, 379 F.3d at 847-48 (Reinhardt, J., dissenting).

16.     Several dissenting opinions, most notably Justice Scalia's opinion in *Maryland v. King*, also recognized that the justifications courts have relied on to uphold the constitutionality of DNA collection from those arrested and in police custody or on supervised release could apply with equal force to the rest of us in society, whether or not we have come under the gaze of the police. 133 S.Ct. at 1989 (Scalia, J., dissenting)("Make no mistake about it: As an entirely predictable consequence of today's decision, your DNA can be taken and entered into a national DNA database if you are ever arrested, rightly or wrongly, and for whatever reason."); *see also Kincade*, 379 F.3d at 872 (Kozinski, J., dissenting)("If collecting DNA fingerprints can be justified on the basis of the plurality's multi-factor, gestalt high-wire act, then it's hard to see how we can keep the database from expanding to include everybody."); *id.* at 843 (Reinhardt, J. dissenting)("all Americans will be at risk, sooner rather than later, of having our DNA samples permanently placed on file in federal cyberspace").

17.     Some cases following *Maryland v. King* seem to be proving true these predictions. For example, last year in *Raynor v. State*, the Maryland high court went one step further than *King* to uphold warrantless DNA collection from someone who hadn't even been arrested for a crime. 99 A.3d at 754 (*cert. denied*, 135 S.Ct. 1509 (Mar. 2, 2015)). Mr. Raynor agreed to come to the station to answer questions in a rape case, and after he refused to provide a DNA sample, the police extracted DNA without a warrant and without his consent from tissue he left behind on a chair. And in *Commonwealth v. Arzola*, the Massachusetts high court upheld the constitutionality of

DNA collected from an article of clothing in police custody even when there was no probable cause or reasonable suspicion to detain the owner of the clothing. 26 N.E.3d 185 (Mass. 2015)(*pet. for cert. filed* (U.S. June 22, 2015); *see also Varriale v. State*, 2015 Md. LEXIS 561 (Aug. 11, 2015)(holding that, if a person consents to DNA testing for one purpose but does not specifically limit that consent, law enforcement may test his DNA for any other purpose).

**Federal, State and Local DNA Databases and the Combined DNA Index System**

18.   In 1994, with the passage of the DNA Identification Act, 42 U.S.C. § 14132, Congress formalized the FBI's authority to maintain CODIS and to establish a national DNA database.[13]

19.   CODIS stores DNA profiles from around the country in a series of local, state, and national databases—all linked via computers—enabling crime labs at every level to share and compare DNA profiles electronically.[14]

20.   The National DNA Index System or "NDIS," the DNA database maintained by the federal government, has been operational since 1998.[15] According to statute, NDIS may contain DNA profiles generated by federal, state and local forensic laboratories from convicted offenders, arrestees, legal, detainees, forensic case samples, unidentified human remains, missing persons and relatives of missing persons.[16] 42 U.S.C. § 14132(a). Currently, all 50 states, the District of Columbia, the federal government, the U.S. Army Criminal Investigation Laboratory, and Puerto

---

[13] FBI, CODIS—Crime, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis_crime; FBI, Legislation Affecting the Federal DNA Database Unit, https://www.fbi.gov/about-us/lab/biometric-analysis/federal-dna-database/legislation-affecting-the-federal-dna-database-unit (last visited Aug. 1, 2015); FBI, CODIS Brochure, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis_brochure (last visited Aug. 1, 2015).
[14] FBI, Science and Technology in the Name of Justice, Part 1: DNA Database Helps Deliver Promise of Powerful Crime-Fighting Tool (Feb. 2, 2004), https://www.fbi.gov/news/stories/2004/february/codis_020204.
[15] FBI, Frequently Asked Questions (FAQs) on the CODIS Program and the National DNA Index System, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet.
[16] FBI, Frequently Asked Questions (FAQs) on the CODIS Program and the National DNA Index System, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet.

Rico participate in NDIS. As of May 2015, NDIS contained over 11,782,211 offender profiles, 2,001,929 arrestee profiles and 632,444 forensic profiles.[17]

21.    To be entered into CODIS, a DNA profile must meet specified minimum requirements, which vary by specimen type. For example, the FBI requires that all DNA profiles from convicted offenders, arrestees, detainees, and certain other "legal profiles" consist, at a minimum, of the 13 "CODIS Core Loci."[18] DNA profiles may also include mitochondrial DNA and Y chromosome STR, data that establish gender and can link a profile along its matrilineal or patrilineal line, respectively.[19]

22.    The DNA Identification Act specifies other statutory requirements for DNA records that may be included in NDIS and CODIS. For example, DNA identification records and DNA analyses may only be included if they are "based on analyses performed by or on behalf of a criminal justice agency . . . in accordance with publicly available standards that satisfy or exceed the guidelines for a quality assurance program for DNA analysis" and prepared by accredited and regularly audited laboratories. 42 U.S.C. § 14132(b).

23.    In addition to the federal NDIS database, states and localities maintain their own DNA databases, called SDIS and LDIS, respectively. DNA profiles entered into these databases do not need to meet the requirements of the DNA Identification Act unless they will later be entered into NDIS and CODIS. For this reason, SDIS and LDIS databases may contain profiles that are not in NDIS or CODIS.

---

[17] FBI, CODIS—NDIS Statistics, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/ndis-statistics (last visited Aug. 1, 2015).
[18] FBI, Frequently Asked Questions (FAQs) on the CODIS Program and the National DNA Index System, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet.
[19] Id.

**Rapid DNA**

24.     Rapid DNA is the "fully automated (hands free) process of developing a CODIS Core STR profile from a reference sample buccal swab . . . without human intervention."[20] Rapid DNA machines are self-contained, can be used by non-scientists both within and outside a lab, and "require no human intervention beyond the loading of the DNA samples and analysis cartridges into the machines."[21] Manufacturers of Rapid DNA analyzers claim their products can be used by a non-scientist outside of a lab to extract a DNA profile from a DNA sample in 90 minutes or less.[22] Some of the analyzers are also portable and "can be used in police vehicles and mobile labs dispatched to crime scenes."[23]

25.     FBI has been investigating integrating DNA profiles generated via Rapid DNA into CODIS since 2006,[24] and has described its "objective for Rapid DNA technology" as the ability "to generate a CODIS-compatible DNA profile and to search these arrestee DNA profiles within two hours against unsolved crime (forensic) DNA while an arrestee is in police custody."[25]

---

[20] FBI, Rapid DNA or Rapid DNA Analysis, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/rapid-dna-analysis (last visited Aug. 1, 2015).

[21] FBI, Statement of Amy S. Hess, Executive Assistant Director, Science and Technology Branch, Federal Bureau of Investigation, Before the House Judiciary Committee, Subcommittee on Crime, Terrorism, Homeland Security, and Investigations, Washington, D.C. ("Statement of Amy S. Hess") (June 18, 2015) *available at* https://www.fbi.gov/news/testimony/fbis-plans-for-the-use-of-rapid-dna-technology-in-codis (last visited Aug. 1, 2015).

[22] Integenx, RapidHIT® System for Human Identification, http://integenx.com/rapidhit-system/ (last visited Aug. 1, 2015).

[23] NEC, For a Safer and Secure Society: Portable DNA Analyzer, Catalogue No. H99-15040012E (Mar. 2015), http://www.nec.com/en/global/solutions/biometrics/products/pdf/catalogue.pdf (last visited Aug. 1, 2015); *see also* NEC, Portable DNA Analyzer, http://www.nec.com/en/global/solutions/biometrics/products/portable_dna_analyzer.html (last visited Aug. 1, 2015);

[24] FBI, Statement of Amy S. Hess, *available at* https://www.fbi.gov/news/testimony/fbis-plans-for-the-use-of-rapid-dna-technology-in-codis.

[25] *Id*.

COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF
THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

26.     Although some states and localities are already using Rapid DNA,[26] the FBI does not currently allow DNA profiles generated using Rapid DNA analyzers outside of an accredited lab environment to be entered into NDIS and CODIS.[27] The FBI has noted, "legislation will be needed in order for DNA records that are generated by Rapid DNA instruments outside an accredited laboratory to be uploaded to the National DNA Index System (NDIS). Additionally, issues relating to the validation and certification of the Rapid DNA analysis instruments must be resolved before implementing this new technology as part of the booking process."[28] FBI has also stated it must modify the CODIS software "to facilitate the searching of Rapid DNA instrument-generated DNA profiles against forensic DNA records."[29]

27.     Rapid DNA manufacturers have recognized the "stringent criteria" for uploading DNA profiles into CODIS and are encouraging local jurisdictions to create their own local DNA databases to avoid these issues.[30]

### FBI Public Statements On and Discussions With Congress Concerning Rapid DNA

28.     For the last several years, the FBI has sent representatives to discuss its various DNA-related projects at biometrics conferences open to the public, including the Biometrics Consortium Conference and Global Identity Summit. According to conference agendas, these representatives have included Thomas Callaghan, Senior Biometric Scientist, FBI Biometrics Analysis Section; Jennifer Wendel, Chief, CODIS Unit, FBI Laboratory; and Brian Edgell, Implementation and Transition Unit Chief, FBI Criminal Justice Information Services Division

---

[26] *See, e.g.*, Chris Asplen, "Rapid" Progress, Forensic Magazine (July 23, 2014), http://www.forensicmag.com/articles/2014/07/rapid-progess; Pete Suratos, Rapid DNA system lets Arizona DPS, law enforcement obtain DNA profiles in 90 minutes, ABC 15 Arizona (Nov. 12, 2014), http://www.abc15.com/news/region-southeast-valley/tempe/rapid-dna-system-lets-arizona-dps-law-enforcement-obtain-dna-profiles-in-90-minutes.

[27] FBI, Rapid DNA or Rapid DNA Analysis, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/rapid-dna-analysis (last visited Aug. 1, 2015). According to FBI, "As of June 2014, no Rapid DNA instruments have been approved by the FBI that meet this definition." *Id*.

[28] *Id*.

[29] FBI, Statement of Amy S. Hess, *available at* https://www.fbi.gov/news/testimony/fbis-plans-for-the-use-of-rapid-dna-technology-in-codis.

[30] Integenx, White Paper: The Case for Rapid DNA, 3, *available at* http://integenx.com/wp-content/uploads/2012/05/The-Case-for-Rapid-DNA.pdf (last visited July 30, 2015); SmallPond, Rapid DNA Integration, http://www.smallpondllc.com/RapidDna.aspx (last visited Aug. 1, 2015).

(CJIS).[31] FBI has also sent representatives to discuss other aspects of its biometrics programs, including Kimberly Del Greco, Chief, Biometrics Services Section; Trudy Ford, Supervisory Management & Program Analyst, FBI CJIS; James Loudermilk, Senior Level Technologist, FBI Science & Technology Branch; Steven Martinez, Executive Assistant Director, Science and Technology Branch; Dr. Richard Vorder Bruegge, Senior Photographic Technologist, FBI; and Jeremy M. Wiltz, Deputy Assistant Director, FBI/CJIS Information Services Branch.[32]

29.    At these conferences, FBI representatives have discussed Rapid DNA; plans to integrate Rapid DNA into CODIS;[33] the impact of *Maryland v. King*, 133 S.Ct. 1958 (which upheld Maryland's law mandating DNA collection from all arrestees);[34] and plans to combine CODIS data with other biometric and biographical information contained in the FBI's Next Generation Identification database.[35]

30.    The FBI has also discussed its Rapid DNA program with Congress. For example, on June 19, 2013, Steven M. Martinez, Executive Assistant Director of FBI's Science and Technology Branch, stated in written testimony to the House Committee on Oversight and Government Reform, Subcommittee on Government Operations, "FBI is, for example, a recognized leader in forensic deoxyribonucleic acid (DNA) identification and has been a leader in the development of rapid DNA identification equipment to allow use of DNA as a biometric element of identification

---

[31] Program agendas for past Biometrics Consortium Conferences held between 2001 and 2014 are *available at* http://biometrics.org/conferences.php. The names listed here were taken from the agendas for the 2012 conference (http://biometrics.org/bc2012/program.pdf); 2013 conference (http://biometrics.org/bc2013/program.pdf); and 2014 conference (http://biometrics.org/bc2014/program.pdf).

[32] *See id*.

[33] *See, e.g.*, Biometric Consortium Conference 2012 Program, 9, *available at* http://biometrics.org/bc2012/program.pdf (last visited Aug. 1, 2015); 2013 Biometric Consortium Conference Preliminary Program, pp. 14-16, 18, *available at* http://biometrics.org/bc2013/program.pdf (last visited Aug. 1, 2015); 2014 Global Identity Summit Final Agenda, pp. 7-8, *available at* http://biometrics.org/bc2014/program.pdf (last visited Aug. 1, 2015).

[34] 2013 Biometric Consortium Conference Preliminary Program, p. 16 *available at* http://biometrics.org/bc2013/program.pdf (last visited Aug. 1, 2015).

[35] Brian L. Edgell, FBI & Valerie Evanoff, CrossResolve, "FBI Next Generation Identification (NGI) DNA Study," Global Identity Summit (Sept. 17, 2014) *available at* http://www.biometrics.org/bc2014/presentations/Wed_1819_Evanoff_1540.pdf (last visited Aug. 1, 2015).

during the criminal booking process."[36]

31.    On March 11, 2014, Representatives Eric Swalwell, Michael Honda, and other congress members sent a letter to FBI Director James Comey, urging the FBI to "develop pilot programs to test the use of Rapid DNA analysis at police booking stations and assess its viability for broad deployment."[37]

32.    On March 26, 2014, Director Comey testified before the House Appropriations Subcommittee on Commerce, Justice, Science, and Related Agencies on the FBI's Fiscal Year 2015 Budget Request and was questioned specifically about Rapid DNA by Representative Michael Honda.[38] During the colloquy, Director Comey stated he found the idea of Rapid DNA to be "very exciting" and said he had been to the FBI lab and was shown two Rapid DNA machines that the lab was testing. He also said he would be in further communications with Representative Honda regarding the letter discussed above.[39]

33.    On March 25, 2015, Director Comey testified again before the House Appropriations Subcommittee on Commerce, Justice, Science, and Related Agencies, this time on FBI's Fiscal Year 2016 Budget Request. During Director Comey's testimony, Representative Michael Honda again questioned him specifically about Rapid DNA and mentioned discussions between the FBI and the Alameda County, California District Attorney in 2014 concerning a Rapid DNA pilot program.[40]

---

[36] FBI, Statement of Steven M. Martinez, Executive Assistant Director, Science and Technology Branch, Before the House Committee on Oversight and Government Reform, Subcommittee on Government Operations, Washington, D.C. (June 19, 2013) *available at* https://www.fbi.gov/news/testimony/overview-of-fbi-biometrics-efforts (last visited Aug. 1, 2015).

[37] "Rep. Swalwell Urges FBI to Improve DNA Testing for Law Enforcement," Press Release (Mar. 11, 2014) *available at* https://swalwell.house.gov/media-center/press-releases/rep-swalwell-urges-fbi-improve-dna-testing-law-enforcement.

[38] Video: FBI Fiscal Year 2015 Budget Request, Testimony of FBA Director James Comey, at 1:02-1:09 (Mar. 26, 2014) *available at* http://www.c-span.org/video/?318504-1/fy2015-fbi-budget-post911-reforms.

[39] *Id*.

[40] Video: 201 FBI Budget Discussion, Honda Comey Rapid DNA Convo, at 0:47 (Mar. 25, 2015) *available at* http://www.c-span.org/video/?c4532528/honda-comey-rapid-dna-convo.

34. On June 18, 2015, Amy S. Hess, the FBI's Executive Assistant Director in the Science and Technology Branch, testified before the House Judiciary Committee, Subcommittee on Crime, Terrorism, Homeland Security, and Investigations, about "efforts relating to Rapid DNA to increase the speed and effectiveness of the Combined DNA Index System (CODIS) and the National DNA Index System (NDIS)."[41] Ms. Hess noted that her testimony was intended "to provide an *update* on the Federal Bureau of Investigation's (FBI) efforts relating to Rapid DNA," indicating the FBI had previously briefed Congress on Rapid DNA.[42]

35. On January 13, 2015, Representative Sensenbrenner introduced H.R. 320, a bill to "establish a system for integration of Rapid DNA instruments for use by law enforcement to reduce violent crime and reduce the current DNA analysis backlog."[43]

**Plaintiff's FOIA Requests**

36. In a letter dated October 28, 2014 and sent by email to the FBI, Plaintiff requested, pursuant to the FOIA, agency records, including electronic records, generated between January 1, 2012 and the present concerning updates to and capabilities of CODIS, as well as the FBI's use of Rapid DNA technology and plans to incorporate DNA profiles generated using Rapid DNA into CODIS.

37. Plaintiff noted in the October 28, 2014 letter, "[a]t national biometrics conferences over the past several years, representatives from the FBI have participated in panels and presentations on CODIS and Rapid DNA" and that these panels have included discussions about the following:

    a. "FBI's plans to use Rapid DNA at the federal level and to incorporate Rapid DNA generated profiles into CODIS;[44]

    b. coordination with members of Congress to change DNA laws to allow Rapid DNA-

---

[41] FBI, Statement of Amy S. Hess, *available at* https://www.fbi.gov/news/testimony/fbis-plans-for-the-use-of-rapid-dna-technology-in-codis.

[42] *Id*. (emphasis added).

[43] *Available at* https://www.congress.gov/bill/114th-congress/house-bill/320/text.

[44] *See, e.g.*, 2014 Global Identity Summit Final Agenda, 8, *available at* http://www.biometrics.org/bc2014/program.pdf (last visited Aug. 1, 2015) (listing "Panel Discussion: The FBI Rapid DNA Booking Station Initiative" as a session scheduled for Sept. 17, 2014). This panel was attended by Jennifer Lynch, EFF's counsel.

COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF
THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

generated profiles to be entered into CODIS;[45]

    c.   enhancements to CODIS;

    d.   plans to link data in CODIS and Next Generation Identification (NGI);[46] and

    e.   the Supreme Court's decision in *Maryland v. King*, 133 S. Ct. 1958 (2013), and its impact on the FBI's practices."

    38.   Accordingly, in the October 28, 2014 letter, Plaintiff requested the following categories of records:

    a.   "all records generated between January 1, 2012 and the present concerning any briefings, discussions, or other exchanges between FBI officials and members of the Senate or House of Representatives concerning Rapid DNA, including, but not limited to, proposed amendments to legislation such as the DNA Identification Act of 1994 and the Justice for All Act of 2004 that would allow Rapid DNA profiles to be entered into CODIS.

    b.   all records generated between January 1, 2013 and the present discussing plans to link data in the CODIS or NDIS databases and the NGI database, including but not limited to:

        i.   discussions with federal, state, and local law enforcement and criminal justice agencies to identify the necessary changes for including DNA Indicator information status (if applicable) on the Identity History Summary (IdHS);

        ii.   plans to incorporate Rapid DNA;

        iii.   information about the 'NGI DNA Study' discussed in Mr. Brian Engell's presentation at the September 17, 2014 Global Identity Summit.

    c.   all records generated between January 1, 2013 and the present discussing the impact of *Maryland v. King*."

    39.   In the letter, EFF also sought records generated between January 1, 2012 and the present reflecting "plans to update, change, improve, enhance or replace the CODIS database and/or software," including:

    a.   "all records describing or discussing proposed improvements or enhancements to CODIS capabilities including:

---

[45] At the FBI's panel discussions on Rapid DNA in 2012 and 2014, attended by Jennifer Lynch, EFF's counsel, representatives from the Bureau mentioned the FBI has been working with members of Congress to change DNA laws to allow Rapid DNA-generated profiles to be entered into CODIS.

[46] *See, e.g.*, Brian L. Edgell, FBI & Valerie Evanoff, CrossResolve, "FBI Next Generation Identification (NGI) DNA Study," Global Identity Summit (Sept. 17, 2014) *available at* http://www.biometrics.org/bc2014/presentations/Wed_1819_Evanoff_1540.pdf.

      i.   searching and matching capabilities, such as incremental searching, partial profile indicators, and familial or kinship searching, electropheragram, base composition, mini-STRs, SNPs, etc;

      ii.   analysis capabilities, such as population statistical calculations;

      iii.   interoperability capabilities, including interoperability with state and international DNA databanks; and

      iv.   sequencing capabilities, such as mtDNA sequencing and full DNA sequencing;

b.   all records related to any agency plans to increase the amount of data included in a CODIS profile, such as plans to include more than the 13 loci currently required for submission of convicted offender, arrestee, detainee, and legal profiles;

c.   any and all records discussing statistics on the percentage of profiles in CODIS that contain only 10 loci as opposed to 13 loci or higher;

d.   any and all communications with Congress concerning the need to expand, modify or change CODIS;

e.   any and all communications with other agencies, including but not limited to the Department of Homeland Security (DHS), regarding DNA collection, storage, and/or sharing;

f.   all records reflecting, describing or discussing plans to incorporate DNA from non-CODIS databanks such as United States or foreign mtDNA databanks, public or private non-forensic DNA databanks, private-sector tissue databanks, newborn blood spot databanks, etc;

g.   all Privacy Impact Assessments and/or Privacy Threshold Analyses prepared for the expansion of or improvements to the CODIS system or other DNA software or database systems; and

h.   all System of Records Notices ("SORNs") that discuss or describe the expansion of or improvements to the CODIS system or other DNA software or database systems."

    40.     FBI responded to Plaintiff's request via letters dated February 9, 2015 and July 1, 2015. In each letter, FBI stated it had "conducted a search of the Central Records System" but was "unable to identify main file records responsive to the FOIA." FBI appeared to break up Plaintiff's request into the following four categories and responded separately by letter to each one:

a.   GLOBAL IDENTITY SUMMIT (SEPTEMBER 17, 2014; RAPID DNA) (1321431-000)

b.   CODIS PROFILES (RAPID DNA; JANUARY 1, 2012- NOVEMBER 17, 2014) (1321443-000);

    c.    CODIS - PRIVACY IMPACT ASSESSMENTS/PRIVACY THRESHOLD ANALYSES (RAPID DNA; JANUARY 1, 2012- NOVEMBER 17, 2014) (1321487-000); and

    d.    CODIS - SYSTEM OF RECORDS NOTICES (SORNS) (RAPID DNA; JANUARY 1, 2012- NOVEMBER 17, 2014)" (1321488-000).

41.    On April 17, 2015 and July 9, 2015, Plaintiff filed administrative appeals, via both fax and email, of each of these responses to Plaintiff's single FOIA request with the Department of Justice's Office of Information Policy (OIP) on the ground that FBI failed to conduct an adequate search of its records.

42.    OIP acknowledged receipt of Plaintiff's administrative appeals via email with letters dated May 14, 2015 and July 23, 2015.

43.    As of the date of the filing of this Complaint, OIP has failed to respond substantively to Plaintiff's administrative appeals.

44.    As the statutory time period by which Defendant must respond to Plaintiff's appeals has passed, Plaintiff has exhausted all applicable administrative remedies with respect to its FOIA request to FBI.

45.    Defendant has wrongfully withheld, and continues to wrongfully withhold, the requested records from Plaintiff.

## CAUSES OF ACTION

**Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records**

46.    Plaintiff repeats and realleges paragraphs 1-45.

47.    Defendant has wrongfully withheld agency records requested by Plaintiff by failing to conduct an adequate search for records and failing to produce all records in the agency's possession responsive to Plaintiff's request.

48.    Plaintiff has exhausted applicable administrative remedies with respect to Defendant's wrongful withholding of the requested records.

49.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court:

     A.    order Defendant to disclose the requested records in their entirety and make copies available to Plaintiff;

     B.    award Plaintiff its costs and reasonable attorneys fees incurred in this action; and

     C.    grant such other relief as the Court may deem just and proper.


DATED:  August 19, 2015

                                By   /s/ Jennifer Lynch               
                                       Jennifer Lynch

                                  Jamie Williams
                                  ELECTRONIC FRONTIER FOUNDATION
                                  815 Eddy Street
                                  San Francisco, CA  94109

                                  Attorneys for Plaintiff
                                  ELECTRONIC FRONTIER FOUNDATION